UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GEORGIA (JO) A. BALDAUF,               )<br>                                                             )<br>         Plaintiff,                                 )<br>                                                             )<br>     v.                                                  )<br>                                                             )<br> CLIFTON DAVIDSON, individually;  )<br> JESSE MARLOW, individually and in his )<br> official capacity as Chief of Police;      )<br> and the TOWN OF PITTSBORO,        )<br>                                                             )<br>         Defendants.                           )    | 1:04-cv-1571-JDT-TAB |

**ENTRY ON PLAINTIFF'S MOTION TO RECONSIDER (Doc. No. 124)[1]**

The Plaintiff, Georgia (Jo) A. Baldauf, has moved the court to reconsider its Entry of December 18, 2006 ("Entry"). Specifically, Baldauf has asked the court to reconsider its decision to grant summary judgment to Defendant Clifton Davidson on her false arrest claim and to Davidson and Defendant Jesse Marlow on her First Amendment retaliatory arrest claims. She has also asked the court to reconsider its decision to strike the testimony of her proposed expert witness, Roger Clark, from consideration of Defendants' summary judgment motions.

Although the court announced its decisions on these issues in its Entry, none of the decisions have yet been reduced to judgment.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Baldauf filed her Motion to Reconsider (Doc. No. 124) on January 22, 2007, and the Defendants, Davidson, Marlow, and the Town of Pittsboro, filed a response on February 5, 2007. The Defendants noted that the court had enlarged the scope of the litigation by creating or preserving a federal claim for excessive force and a state law claim against Pittsboro for Davidson's alleged battery.

Baldauf filed a reply on February 20, 2007. The matter is fully briefed, and the court rules as follows.

## I.  BACKGROUND

This litigation arose over a confrontation between Baldauf and Davidson, then a Pittsboro Police officer, on January 27, 2003, at the Crystal Flash gas station and convenience store in Pittsboro. Baldauf made a derogatory remark about the Pittsboro Police Department, and some yelling allegedly ensued. According to Baldauf, Davidson pushed her and ordered her out of the store. When he pointed his finger at her, she pushed it aside. Davidson then spun her around and shoved her against a counter. He allowed her to leave the store. However, a short time later, he arrested her on charges of battery and disorderly conduct as she was attempting to complain to Marlow, who was the town marshal and chief of the police force.

For a more detailed statement of the facts, the reader should refer to the Entry.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not explicitly recognize motions for reconsideration, apart from Rule 59 or Rule 60 motions to amend or obtain relief from a judgment or order. Yet such motions are an accepted part of federal civil practice. Moreover, Rule 54(b) authorizes a court to revise any decisions or orders, which adjudicate fewer than all the claims and have not been reduced to judgment, "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); *see also Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993) (noting that "a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment") (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943)).

Motions for reconsideration are appropriate where a court has patently misunderstood a party, made a decision outside the scope of the adversarial issues, or misapprehended the evidence, or where there has been a significant change in the controlling law. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). More generally, a motion to reconsider, much like a Rule 59(e) motion to alter or amend judgment, allows a court to correct manifest errors of law or fact. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). However, a party cannot use a motion to reconsider to introduce evidence that should have been presented while the matter underlying the dispute was pending before the court. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

With regard to the summary judgment issues, the standard of review discussed in the Entry applies. Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider all evidence, and draw all reasonable inferences, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the non-moving party must set forth specific evidence showing there is a genuine issue of material fact that requires a trial. Fed. R. Civ. P. 56(e).

## III.  DISCUSSION

Baldauf argues that her false arrest claim should be reinstated because the court has misconstrued Indiana law on criminal battery, failed to consider certain material facts showing that Baldauf's physical contact was not rude, insolent, or angry, and failed to judge that contact in the overall context of Davidson's notably aggressive, assaultive, and battering behavior. (*See* Pl.'s Mem. Supp. Mot. Recons. 3-12; Pl.'s Reply Mot. Recons. 4.) The court disagrees.

The primary issue before the court with regard to Baldauf's false arrest claim is not whether Baldauf in fact committed battery on a police officer, but whether Officer Davidson had probable cause to believe that she had battered him – and if not, whether a reasonable police officer would have known that no probable cause existed. This subject was extensively covered in the Entry, and Baldauf's disagreement with the court's reasoning is not a customary ground for reconsideration. As the court previously

discussed, the Indiana Court of Appeals in *K.D. v. State*, 754 N.E.2d 36, 41 (Ind. Ct. App. 2001), upheld the conviction of a youth who yanked on the gunbelt of an officer in an effort to remove his weapon. Although the youth claimed to be merely joking, the court noted that this contention "further supports the trial court's conclusion that [the youth] did act in an insolent manner by boldly disregarding the authority of the school police officer." *Id.* Indiana has given its police officers an extra measure of protection, and *K.D.* stands for the proposition that nearly any intentional physical contact with a police officer, however slight, *may* be viewed as insolent.

By so stating, this court is not interpreting Indiana law to mean that a suspect's intentional contact in warding or attempting to ward off an officer's unlawful or excessive blows would be insolent. Although the court has found no decisions addressing this issue, Indiana case law suggests the opposite is true. In *Shoultz v. State*, 735 N.E.2d 818, 825 (Ind. Ct. App. 2000), the Indiana Court of Appeals found that a man could not be convicted of resisting law enforcement for using reasonable force in attempting to avoid or resist the officer's use of excessive force. *See also Casselman v. State*, 472 N.E.2d 1310, 1316 (Ind. Ct. App. 1985) (noting that while Indiana had abrogated the common-law rule allowing reasonable resistance to an unlawful arrest, this abrogation did not extend to criminalizing resistance to the use of excessive force). Under the reasoning in these cases, an Indiana citizen's intentional physical contact with a police officer would not be insolent if the citizen was using reasonable force to avoid an officer's illegal use of force.

5

The question before the court is whether Baldauf has provided any evidence showing, or at least allowing an inference, that she was attempting to deflect a blow from Davidson when she pushed his finger aside.  For the purpose of summary judgment, the court has accepted Baldauf's version of the facts, in which Davidson verbally assaulted her, used his physical size to intimidate her, and then physically shoved her while ordering her out of the store.  However, her own testimony does not indicate that, when Davidson pointed his finger at her, she was moving his finger aside because she was in fear of being struck.  Rather, her narrative of the finger pushing (as well as the overall tone of her deposition) strongly suggests she pushed his finger aside because she did not believe he was justified in ordering her out of the store.

Her most pertinent testimony reads:

> I told him to get away from me and leave me alone.  And, of course, you know from the testimony or his testimony that, no, I didn't leave at that time.  I turned around.  And when I told him to get away from me and leave me alone, he put his finger in my face.  And because I had committed no crime, I had not created a disturbance, I had not raised my voice and I had done nothing wrong, I told him to get away from me and leave me alone.  And when he put his finger in my face, I pushed his finger out of my face and once again told him to get away from me and leave me alone.

(Baldauf Dep. 56-57.)  Clearly, she disagreed with Davidson's authority, whether it was his authority to order her out of the store or to invade her personal space.[2]

The court does not find, as the Defendants argue (Defs.' Resp. Mot. Recons. 3), that this statement is definitive.  Even if defiant of Davidson's authority, Baldauf's

---

[2] Baldauf argues that Davidson's finger was "only inches from her face," but does not direct the court to any evidence of this.  (*See* Pl.'s Reply Mot. Recons. 4.)

6

physical contact with Davidson would not be insolent if her contact was a defensive or reflexive movement aimed at avoiding harm, justified by Davidson's aggressive and assaultive behavior.

The problem again is a lack of evidence. Baldauf focuses on testimony that she was afraid or scared during her confrontation with Davidson (Pl.'s Mem. Supp. Mot. Recons. at 5), coupled with Davidson's earlier actions displaying a "propensity for physical violence" (*id.* at 6), suggesting that this is circumstantial evidence from which a reasonable jury could infer that she pushed aside his finger to defend herself. However, the testimony she cites is too slim a thread to support such an inference. Baldauf testified that, after Davidson pushed her and told her to leave, she turned around and told him that she was not finished making her purchases and told him to "shut up" and leave her alone. (Baldauf Dep. 56.) She said she was "beginning to be afraid" but only because Davidson was asking her who she was. "[A]nd I was more afraid than anything because I was afraid of retribution, retaliation on my family, and we go to Pittsboro a lot." (*Id.*)

Baldauf points out that Tabitha Johns, one of the clerks, and Nicole Buchanan, a customer who happened into the store during the altercation, also testified that she appeared to be afraid. (*See* Pl.'s Mem. Supp. Mot. Recons. 5.) However, Johns testified that there was no reason for anyone to be afraid "until that moment when it escalated," (Johns Dep. 111), and the "moment" clearly refers to the physical

confrontation when Davidson grabbed Baldauf's arm and twisted it to force Baldauf against the counter.[3]  (*Id.*)  Johns testified all was calm until then.  (*Id.*)

Thus, neither Baldauf's nor Johns' testimony would support an inference that Baldauf was attempting to ward off a blow when she pushed Davidson's finger aside. The only testimony suggesting she was afraid earlier in the confrontation comes from Buchanan, who said that Baldauf "did look scared that day." (Buchanan Dep. 31.)  This is not sufficient evidence from which a reasonable jury could find that Baldauf was defending herself.

Moreover, both Johns and fellow clerk Dea M. Albright testified that Davidson pointed his finger at Baldauf only after she had pointed her finger at him.  According to Johns, Baldauf was at the counter when she turned around, raised her voice, and pointed her finger at Davidson.  (Johns Dep. 40.)  "[S]he went towards him and pointed her finger and then he pointed his finger[, and] then she grabbed it, and then the arm thing happened."  (*Id.* at 45.)  Albright testified that "after [Baldauf] pointed at him, he pointed to her stuff on the counter and pointed to the door."  (Albright Dep. 57.)

Baldauf has not denied pointing her finger at Davidson.  This undisputed evidence from Albright and Johns depicts an atmosphere of mutual finger-pointing. Coupled with Baldauf's testimony that she was ordering Davidson to leave her alone, a

---

[3] She did not testify, at least in the portions of her deposition submitted to the court, about Davidson pushing Baldauf before he ordered her to leave the store.

reasonable jury would have no basis for inferring that Baldauf was pushing aside Davidson's finger to protect herself from a blow.

Ultimately, the issue is not whether Baldauf was in fact insolent, but whether Davidson had reasonable grounds for believing that her contact with him was insolent. *See Washington v. Haupert,* --- F.3d ----, 2007 WL 896186, at *4 (7th Cir. Mar. 27, 2007) (noting, in a case alleging an arrest for domestic battery without probable cause, of the need to show that officers *unreasonably* believed a battery had been committed). Baldauf has not presented evidence supporting a reasonable inference that Davidson's belief that she had touched him in an insolent manner was unreasonable.

Even if the court is wrong, Davidson would be entitled to qualified immunity. Given the Indiana Court of Appeal's discussion in *K.D.*, a reasonable police officer could have reached the conclusion that Baldauf's finger-pushing was a battery. Although evidence of Baldauf's fear might support an inference that her touching of Davidson was not in fact insolent, an officer would not be held accountable for failing to discern that fear. There are no facts suggesting that Davidson was attempting to strike her when he pointed his finger.[4]

---

[4] Baldauf has drawn the court's attention to *Washington v. Haupert*, --- F.3d ----, 2007 WL 896186 (7th Cir. Mar. 27, 2007) on this issue. In *Washington*, the Seventh Circuit upheld the denial of summary judgment on qualified immunity grounds because of a dispute over the facts regarding probable cause. *Id.* at *8. Here, the court has ruled on the basis of Baldauf's version of the facts, along with the inferences that could be drawn therefrom, and the undisputed facts in the record, considered in the light most favorable to her. As such, although Davidson offers a distinctly different account of what happened, no material dispute of facts underlies the determination of probable cause or qualified immunity.

The court by no means is condoning the type of behavior attributed to Davidson by Baldauf. However, an officer's excess use of force or abuse of his authority does not provide a license for suspects or other persons to ignore his status as a police officer. Sufficient remedies exist under state tort law and federal law under § 1983 for dealing with an officer who engages in such conduct. The court therefore **DENIES** Baldauf's Motion to Reconsider her false arrest claim and leaves intact its decision to grant summary judgment to Defendants Davidson and Marlow on this issue.

The court reaches a different conclusion regarding her retaliatory arrest claim, but only with respect to Davidson.

The court finds that it has misapprehended the evidence that would support a conclusion that Davidson's explanation for why Baldauf was arrested – the finger-pushing – was phony. In short, the court failed to consider fully Davidson's remarks to Baldauf at the Crystal Flash indicating that she was free to leave and his subsequent decision to arrest her after she drove to the town's police offices to file a complaint. From such evidence, a reasonable jury could conclude that Davidson's actual motivation in arresting her was to suppress her exercise of her First Amendment rights. (The court does not find that it has misapprehended the evidence regarding Marlow, and therefore refers readers to the Entry's discussion of Baldauf's First Amendment claim with respect to him.)

In reaching this conclusion, the court must first address whether the existence of probable cause precludes a First Amendment retaliatory arrest claim. Contrary to

Baldauf's assertion (*see* Pl.'s Mem. Supp. Recons. 13), the court did not assume a ruling on this issue in its Entry.[5] It did not need to reach this issue then, but it is necessary now.

The Seventh Circuit has not addressed the question directly. In *Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002), *overruled on other grounds by Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004), one of the parties asked the Seventh Circuit to find the existence of probable cause to be a complete defense to a First Amendment retaliatory arrest claim. While noting that such a decision would parallel the rule that probable cause is a complete defense to a false arrest claim, the court declined the invitation to issue a ruling. *Id.* Other circuits have split over this question, but the extent of their rulings is not entirely clear.

For example, in *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), a bar owner alleged that police officers arrested him, following an altercation at his pub, in retaliation for criticisms he had made of the police while campaigning for office months earlier. The court stated that because police officers had probable cause for the arrest, the court did not need to inquire further into the officers' motives. *Id.* However, the court also noted that were such an inquiry to be made, the bar owner had produced no evidence of the officers' motive. *Id.* Given the court's focus on the time between the bar owner's criticisms and his arrest, and the lack of evidence regarding retaliatory

---

[5] The court did note, as it does now, that probable cause is "highly valuable circumstantial evidence" that the allegedly wrongful conduct "would have occurred even without a retaliatory motive." (*See* Entry 41 n.43 (quoting *Hartman v. Moore*, 547 U.S. 250, ---, 126 S.Ct.1695, 1704 (2006)).)

11

motive, *Curley* might not stand for a blanket rule in the Second Circuit that the existence of probable cause precludes all First Amendment retaliatory arrest claims. *Compare Redd v. City of Enterprise*, 140 F.3d 1378, 1383-84 (11th Cir. 1998) (declaring that when a officer has probable cause to arrest someone, or qualified immunity in the sense of "arguable probable cause," he is immune from First Amendment claims arising from that arrest) *with Greene v. Barber*, 310 F.3d 889, 895-97 (6th Cir. 2002) (suggesting that probable cause would not defeat a retaliatory arrest claim). *But see Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) (stating that *Greene*'s holding had been modified by a Supreme Court ruling but leaving the extent of that modification an open question).

The Supreme Court touched upon this issue in *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695 (2006), but only in relation to retaliatory prosecution claims, not retaliatory arrest claims. *Hartman* involved a business executive's claim that a government prosecution was engineered in retaliation for his criticisms of the United States Postal Service. *Id.* at 1700.[6] The Court held that a plaintiff alleging a retaliatory prosecution claim under § 1983 must prove an absence of probable cause. *Id.* at 1699. The Court rejected the appellate court's suggestion that in exceptional cases, involving strong motive evidence and only weak probable cause, a retaliatory prosecution claim might lie. *See id.* at 1704 n.7.

---

[6] Page numbers refer to the Supreme Court Reporter as the opinion in United States Reports has not yet been published.

Although the Eighth Circuit has suggested that *Hartman* sweeps sufficiently broad to require plaintiffs bringing other retaliation claims to show an absence of probable cause, *see Williams v. City of Carl Junction*, 480 F.3d 871, 2007 WL 913398, at * 4 (8th Cir. Mar. 28, 2007), the Supreme Court explicitly distinguished retaliatory prosecution claims from these other First Amendment claims. *Hartman*, 126 S. Ct. at 1704-05. First, it noted that in retaliatory prosecution claims, there "will always be a distinct body of highly valuable circumstantial evidence available to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause." *Id.* at 1704. In this respect, a retaliatory prosecution claim does not differ from a retaliatory arrest claim. However, the Court then noted the second unique quality of retaliatory prosecution claims – a quality not shared even by retaliatory arrest claims. This was the need for a plaintiff alleging retaliatory prosecution to establish a causal link between the non-prosecuting government agent's retaliatory motive and the prosecutor's decision to press charges. *Id.* at 1705. "[S]ome evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause." *Id.* at 1706.

Tellingly, the Court acknowledged that its imposition of a requirement to show the absence of probable cause on plaintiffs in retaliatory prosecution cases was discretionary. It found such discretion justified due to the complexity of causation in such cases, in which the required showing "will have high probative force, and can be made mandatory with little or no added cost." *Id.* at 1707.

*Hartman* provides little justification to import the same requirement into First Amendment retaliatory arrest claims. In these cases, there is no need to bridge a causal gap between one person's retaliatory motive and another person's injurious act. A plaintiff will bear the burden of persuasion to show that the arresting officer was attempting to suppress the plaintiff's exercise of his or her constitutional right, and the existence of probable cause will remain "highly valuable circumstantial evidence" tending to show that the plaintiff would have been arrested even without a retaliatory motive. *See id.* at 1704. This does not mean that the absence of probable cause should be a required element of a retaliatory arrest claim.

This case may indeed illustrate the exception to the rule that the existence of probable cause is normally sufficient proof that the plaintiff would have been arrested even in the absence of the arresting officer's animus.

To establish a prima facie case of First Amendment retaliation, Baldauf must show that (1) her conduct was constitutionally protected and (2) a substantial or motivating factor in Davidson's decision to arrest her. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). She has presented sufficient evidence to satisfy both prongs at this procedural stage. As the Entry discussed, her criticisms of the Pittsboro Police Department concern the sort of issues of public concern that the First Amendment protects most strongly, and the timing of her arrest, closely following her exercise of her First Amendment rights, is all that is required to establish causation for the prima facie case.

The court previously noted the Defendants' substantial evidence showing that Baldauf's comments were not the but-for cause of her arrest. As the Supreme Court has noted, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman*, 126 S.Ct. at 1704. However, the court now recognizes that Baldauf has submitted sufficient evidence from which a reasonable jury could conclude that Davidson's stated reason for arresting her – the finger-pushing and perhaps her disorderly conduct as well – was not his actual reason.

According to Baldauf's testimony, Davidson told her that, although he could arrest her, he would let her go if she left the store. (Baldauf Dep. 62-63.) "He told me that he was letting me go, that he wasn't going to arrest me." (*Id.* at 65.)

As Baldauf went to leave, however, she told Davidson she was going to see Marlow to file a complaint. (*Id.* at 63.) When she returned moments later, to obtain the change from her purchases, she found Davidson on the phone to Marlow. (*Id.* at 67.) She told him again that she was going to see Marlow and that he had gotten himself in trouble. For the first time, she identified herself as a Boone County Commissioner. (*Id.* at 67-68.) Then she left and drove to the town's police office. (*Id.* at 69.)

From this testimony, confirmed in large part by the attendants (*see* Albright Dep. 60; Johns Dep. 48), a reasonable jury could conclude that Davidson arrested Baldauf solely to prevent her from exercising her First Amendment right to complain about his behavior and to petition Marlow or the town board for redress. In reaching this decision,

15

a jury could find that in calling Marlow, and subsequently telling Johns that Marlow had advised that Baldauf should have been arrested, Davidson was simply establishing his pretext for arresting her.  A substantial factual dispute remains as to whether Davidson would have arrested Baldauf had she not announced her intent to complain to Marlow.

For these reasons, the court **VACATES** that portion of its Entry limiting Davidson's First Amendment claim to his conduct at the Crystal Flash and reinstates Baldauf's claim that she was arrested in retaliation for her exercise of her First Amendment rights.  The court does not change or modify its decision to grant summary judgment to Marlow on this claim.

Nor will the court reconsider its decision to exclude Baldauf's proposed expert witness, Roger Clark, from its summary judgment considerations.  Baldauf has offered no legal basis for reconsideration, only her disagreement with the court's conclusions regarding the probative value of his testimony.  To prove her point, she has attached transcripts of Clark's deposition.  Such testimony, however, should have been provided to the court during the summary judgment proceedings and will not be reviewed.  The parties were aware of the deadlines for filing and responding to the summary judgment motions.  As the court previously noted, Baldauf may attempt to qualify Clark as an expert witness at trial.  For these reasons the court **DENIES** Baldauf's motion to reconsider its ruling on her proposed expert witness.

This still leaves Defendants' suggestion, albeit raised in passing (*see* Defs.' Resp. Mot. Recons. 1 & n.1), that the court exceeded the scope of the adversarial

issues by preserving or creating a federal claim for excessive force and a state law claim against Pittsboro for Davidson's alleged battery. Although the Defendants have not requested reconsideration, the court examines these issues briefly.

The first was covered amply in the Entry. As the court noted, Federal Rule of Civil Procedure 8(a) only requires plaintiffs to provide defendants a short and plain statement showing their entitlement to relief and a request for judgment. Baldauf did this much and more. In her Complaint, she asserted that Davidson's and Marlow's acts "violated her rights under the Constitution, to due process, to be free from unlawful arrest, and to be free from any punishment or excessive force." (Compl. ¶ 23.) She did not respond directly to Davidson's claim that she had not alleged a federal claim for excessive force (*see* Davidson Br. Supp. Mot. Summ. J. 18), but her failure to reply was not fatal because she submitted sufficient evidence to defeat summary judgment on her excessive force claim against Davidson.

Defendants also suggest the court allowed a claim of liability against Pittsboro on Baldauf's state law claims of assault and battery when, as they correctly pointed out, Baldauf did not request such relief on that count. (In her Complaint, she requested specific relief for each count, rather than seeking a general claim of relief at the conclusion.) In her response to Marlow's motion for summary judgment, she declared also that her claim of assault and battery "is brought against Defendant Davidson alone." (Pl.'s Resp. Marlow Mot. Summ. J. 5 n.2.) Additionally, in her response to Pittsboro's summary judgment motion, she confined her arguments to her § 1983 claims alleging liability under its failure to train and supervise Davidson and Marlow.

Perhaps these facts would support a dismissal of her state law claim, but the dismissal would be without prejudice, and the court, even at this late date, would grant a motion to amend her complaint, given the Defendants' ample notice of the grounds upon which Baldauf is seeking relief and the lack of any allegations of undue delay, bad faith or dilatory motive on her part.  *See* Fed. R. Civ. P. 15(a); *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007).

However, Defendants have suggested (*see* Defs.' Affirmative Defenses ¶ 6) that Baldauf's state law claim against Pittsboro is barred by her failure to comply with the notice requirements of the Indiana Tort Claims Act.  *See* Ind. Code § 34-13-3-8.  If such a defense can be raised, the court would encourage the parties to resolve this issue before trial.

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Baldauf's Motion to Reconsider its Entry of December 18, 2006, except for her request seeking the court's reconsideration of her First Amendment retaliation claims against Jesse Marlow and Davidson.  The court **AFFIRMS** its decision to grant Jesse Marlow summary judgment and deny summary judgment to Clifton Davidson.  The court **VACATES** that portion of

the Entry dismissing her retaliatory arrest claim against Davidson.  Left therefore for trial or further adjudication are the following issues:

(1) A federal claim against Davidson pursuant to § 1983 that he violated Baldauf's constitutional right to due process by an excessive use of force in response to her contact with his finger,

(2) A federal claim against Davidson also pursuant to § 1983 that he violated her constitutional right of free speech by ordering her and/or attempting to force her out of the store, *and/or by subsequently arresting her*, all in order to punish her for remarks she had made or to silence her from making any further comments, and

(3) A claim against Pittsboro pursuant to state law that Davidson assaulted and battered her, by shoving and threatening her as he ordered her to leave the store the first time, and by using excessive force after she pushed his finger aside.

As before, judgment will await disposition of the remaining claims, which share a close factual connection to the claims for which summary judgment is appropriate.

ALL OF WHICH IS ENTERED this 23rd day of April 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Michael K. Sutherlin
Michael K. Sutherlin & Associates
msutherlin@michaelsutherlin.com

Robb Alan Minich
Michael K. Sutherlin & Associates
robbminich@hotmail.com

Kenneth Collier-Magar
Collier-Magar & Roberts P.C.
kenneth@cmrlawfirm.com

Liberty L. Roberts
Collier-Magar & Roberts P.C.
liberty@cmrlawfirrm.com