UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

GEORGIA (JO) A. BALDAUF,            )
                                    )
          Plaintiff,                )
                                    )
     v.                             )          1:04-cv-1571-JDT-TAB
                                    )
CLIFTON DAVIDSON, individually;     )
JESSE MARLOW, individually and in his )
official capacity as Chief of Police; )
and the TOWN OF PITTSBORO,          )
                                    )
          Defendants.               )


**ENTRY ON PLAINTIFF'S MOTION TO STRIKE EXPERT WITNESS JAMES GAITHER (Doc. No. 130) AND DEFENDANTS' MOTION IN LIMINE TO EXCLUDE REPORT AND TESTIMONY OF EXPERT WITNESS ROGER CLARK (Doc. No. 140)[1]**

Both parties are seeking to strike at least one of their adversary's expert

witnesses.  Plaintiff Georgia (Jo) A. Baldauf wants the court to exclude the testimony of

Dr. James M. Gaither, an addiction medicine physician whom Defendants offer to show

the effect of Baldauf's alleged drug use on her temperament.  Defendants Clifton

Davidson and Town of Pittsboro want the court to exclude the testimony of Roger A.

Clark, a former Los Angeles County Sheriff's lieutenant whom Baldauf is offering as an

expert on police procedures.[2]  The parties dispute the admissibility of these witnesses

pursuant to the general standards for relevancy under Federal Rules of Evidence 402

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2]  Defendant Jesse Marlow will be dismissed from this litigation pursuant to the Court's Entry of December 18, 2006.

and 403 and the specific standards for expert witnesses set by Rule 702.  The motions are briefed and the court rules as follows.

## I. BACKGROUND

This matter arises from a confrontation on January 27, 2003, between Baldauf and Davidson, then a Pittsboro Police officer, at a Crystal Flash convenience store in Pittsboro.  Baldauf made a derogatory remark about the Pittsboro Police Department, and some yelling allegedly ensued.  According to Baldauf, Davidson pushed her and ordered her out of the store.  When he pointed his finger at her, she pushed it aside.  Davidson then allegedly spun her around and shoved her against a counter.

Baldauf, who was arrested on charges of battery on a police officer and disorderly conduct, has pending claims in this court alleging that Davidson's actions constituted assault and battery and violated her constitutional rights of free speech and to be free from the use of excessive force.  Partly relevant are factual disputes about Baldauf's conduct in the store, including whether she merely pushed aside his finger or grabbed and shook it, and Davidson's response to her conduct and his reasons for acting as he did.

For further details and citations to the record, the reader should refer to the court's Entry of December 18, 2006, on the motions for summary judgment.

2

## II.  DISCUSSION

### A.  Plaintiff's Motion to Exclude Dr. James M. Gaither

The Defendants have designated Dr. James M. Gaither as one of two proposed expert witnesses for trial.  (Defs.' Expert Witness Disclosure.)  They appear to have hired Dr. Gaither in response to the deposition of a treating psychologist, Dr. Patricia M. Couvillion, and discovery of her clinical progress notes, that Baldauf had been treated with various anti-anxiety and anti-depressant drugs and that at one point in time, she had smoked marijuana to deal with her stress.  (*See* Couvillion Dep. 2-3.)  According to Dr. Gaither's report, which was designated as evidence in support of Defendants' summary judgment motions but never cited in their briefs, he is prepared to testify that the use of marijuana combined with the use of various anti-depressant and anti-anxiety drugs may make a person angry and aggressive.  (Gaither Report 1.)

Dr. Gaither concedes he is unable to determine, from the records that he reviewed, any timelines for Baldauf's use of these drugs, and therefore cannot determine when Baldauf "may have been in a state of use, impairment, intoxication or withdrawal" from these drugs.  (*Id.* at 6.)  Nonetheless, he is also prepared to testify "that, at any given time, [Baldauf] was subjected to interactive psychopharmacology that may have caused anxiety, irritability and/or aggression with a sufficient cognitive impairment that her behavior would be erratic and unpredictable."  (*Id.* at 6-7.)  He further offers what appears to be his ultimate conclusion that "in an individual predisposed to assertive behavior, it is a reasonable medical conclusion, and beyond a

3

reasonable doubt, that such a pattern of drug use would contribute to the events in question in this case."  (*Id.* at 7.)

Such testimony is inadmissible on several levels.  Foremost, it is inadmissible character evidence.  The Federal Rules of Evidence generally prohibit parties from introducing evidence regarding a person's character or trait of character.  Fed. R. Evid. 404.  There are limited exceptions for introducing character evidence in criminal trials.  *Id.* at 404(a)(1),(2); 609.  Second, witnesses may testify as to another witness's credibility and reputation for truthfulness, and specific instances that shed light on a witness's credibility may sometimes be explored during cross-examination.  *Id.* at 607, 608.  However, a party may not offer evidence about a person's character "for the purpose of proving action in conformity therewith on a particular occasion."  *Id.* at 404(a).

Yet this is all that Dr. Gaither's testimony purports to do.  His report provides an alleged medical basis for what he describes Baldauf's character to be.  However, he does not know that Baldauf was using any of these drugs at any particular time or if she had withdrawn from using any drugs shortly before the events of January 27, 2003.  Rather his testimony is simply being offered to show that Baldauf, as a result of her alleged drug use, had a propensity to be violent and assertive.

Nor have Defendants offered any reason why evidence of Baldauf's drug use, including her admission that she had tried marijuana at one point, would be admissible evidence of other acts unrelated to her character.  *See id.* at 404(b).  Her use of drugs is

4

not itself an issue before the court.  Rule 404(b) allows a party to introduce evidence of other crimes, wrongs, or acts to show motive, intent, absence of mistake or other issues that are relevant.  *Huddleston v. United States*, 485 U.S. 681, 685 (1988) (discussing the use of 404(b) evidence in civil and criminal cases).  However, Defendants have not offered any reason for introducing Dr. Gaither's report other than to show Baldauf's alleged propensity to act in a certain way.  They merely claim the evidence will "assist the jury in determining if Baldauf was acting in the bizarre and belligerent manner described by the store clerks and Officer Davidson."  (Defs.' Resp. Mot. Strike Gaither 7.)  This is character evidence strapped in a white coat.

Even if not so, Dr. Gaither's report would still fail for two more reasons.  First, its probative value is substantially outweighed by danger of unfair prejudice and confusion of issues.  *See* Fed. R. Evid. 403.  The probative value of Dr. Gaither's conclusions is weakened by multiple assumptions.  For example, his ultimate conclusion is preceded by assumptions piled on assumptions.  "Some conjecture . . . must be inferred." (Gaither Report. 6).  "It can be opined."  (*Id.*)  "It is reasonable to assume."  (*Id.*)  "[M]ay have caused."  (*Id.*)  "Within the constraints of these assumptions."  (*Id.* at 7).  Against testimony of such slim value is the prejudicial effect attending allegations that Baldauf was an illegal drug user and the risk that the jury would view her drug use as an issue in the case.  Federal Rule of Evidence 403 strongly weighs against the use of such evidence.

Second, Dr. Gaither's report, along with his accompanying resume, does not meet the standards for admissibility set by Federal Rule of Evidence 702 and *Daubert v.*

5

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  (While Rule 702 has been amended since the *Daubert* decision, "the standard of review that was established for *Daubert* challenges is still appropriate."  *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005).)

Rule 702 provides in part that an expert, if qualified, may provide helpful testimony if that testimony is "based upon sufficient facts or data" and is "the product of reliable principles and methods."  Fed. R. Evid. 702.  Likewise, *Daubert* requires the court to act as "gatekeeper" by considering both the relevance and the reliability of the expert's evidence.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  A district judge shall determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is itself reliable.  *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 (7th Cir. 2003) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

In this case, Dr. Gaither's testimony concerns the pharmacological effects of various anti-anxiety drugs and anti-depressants, taken together or separately, intermittently, and in possible combination with some marijuana use.  Nothing in Dr. Gaither's testimony shows that he has any particular expertise in the field of pharmacology.  His initial medical training was in internal and pulmonary medicine.  (*See* Gaither Curriculum Vitae (Defs.' Mots. Summ. J. Ex. R) 1.)  He alleges that he has been certified in the speciality of addition medicine (and indeed has worked as an addiction medicine staff position, among other assignments, since 2002).  (*Id.* at 2-3.)  However, Defendants have provided no evidence showing how his presumed training in

6

this field, or in any of his other specialties, demonstrate his expertise in the pharmacological effects of drugs upon a person's behavior.

Dr. Gaither has co-authored articles regarding the protective effects of certain drugs with respect to the stomach, liver, kidney and lungs.  (*Id.* at 8.)  However, these articles in themselves, while concerning the effects of drugs in relation to internal and pulmonary medicine, are not evidence of any expertise regarding the behavioral effects of drugs.  He has also published or prepared presentations about drug use screening, smoking cessation, and street drugs, (*id.* at 8-9), but these are only indicative of his interest in screening and counseling issues.

Dr. Gaither's resume, while impressive, does not provide any assurance that he is qualified to render the opinions in his report.  Merely possessing a medical degree does not qualify its holder as an expert in all medically related fields.  *See, e.g., O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (noting that treating physicians must also meet the requirements of Federal Rule of Evidence 702).   Normally, the apparent lack of relevant expertise on Dr. Gaither's resume would not demonstrate that he was necessarily unqualified, and a *Daubert* hearing to determine his qualifications would be appropriate.  *See Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004).  However, a hearing is not required when there are sufficient grounds for excluding the expert opinion.  *See Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067-68 (7th Cir. 1998) (affirming the exclusion of an expert witness without a hearing when the testimony only offered a speculative theory).

Dr. Gaither offers only conjecture. Although his report indicates that he reviewed a number of articles regarding the pharmacological effects of various drug (and that these articles appeared in peer-reviewed journals), this alone would not qualify him as an expert. Yet the court need not inquire further as to whether these studies rested on good science because his report – the application of whatever theories are contained in those studies – is founded on incomplete and sketchy knowledge.

Dr. Gaither lacked information about what medicines Baldauf was taking, when she was taking them, and in what quantities or dosage. He himself acknowledges this: "An explicit iteration of the extent, duration, and nature of use is not available in the information reviewed . . . ." (Gaither Report 6.) Without such information, though, Dr. Gaither is only guessing.[3] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-45 (1997) (affirming a district court's exclusion of expert testimony when the court concluded that the expert's studies were not sufficient to support their conclusions); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) (noting that *Daubert* requires a judge to determine that proffered evidence is "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist").

---

[3] That Dr. Gaither's report was itself "peer-reviewed," as Defendants claim, does not establish a methodological basis for his conclusions. (*See* Defs.' Resp. Opp'n Mot. Strike Expert 4.) In *Daubert*, 509 U.S. 579, 593-94, the Court discussed the importance of peer review in determining whether an expert's testimony was grounded in science. However, the court was referring to whether the theory or technique had been published in peer-reviewed publications. *Id.* The court was not suggesting that parties obtain "peer reviews" of a proposed expert's conclusions. This would only invite a contest of second opinions, which might or might not have relevance to the reliability and validity of the first expert's theory or technique.

For the reasons noted above, the court **GRANTS** Baldauf's motion to exclude Dr. Gaither from testifying as an expert witness and to exclude his report from further consideration in this ligation.

### B.  Defendants' Motion to Exclude Roger Clark

Defendants are seeking to exclude Baldauf's proposed expert on police procedures, Roger A. Clark, who is a former Los Angeles County Sheriff's lieutenant, because, they allege, his proffered testimony does not meet the standards set by Rule 702 and *Daubert*.  The Defendants first raised this issue at the summary judgment stage, and the court agreed to strike Clark's report from consideration at that time because it offered only conclusory judgments of little value.  However, the court expressly declined to rule on the offer of Clark as an expert witness at trial.  (*See* Summary Judgment Entry 6 n.9.)

Defendants have reasserted their summary judgment arguments with respect to Clark and contend as well that Clark must be excluded as an expert witness because (1) his testimony is irrelevant to the remaining issues before the court and (2) his report did not disclose the opinions about which he would presumably testify.  (See Defs.' Br. Supp. Mot. Exclude Clark 2, 6.)

Additionally, Defendants' Reply asserts that Baldauf filed her Response opposing their motion to exclude Roger Clark a day late, and should therefore be stricken.  (Defs.' Reply Supp. Mot. Exclude Clark 1.)  Baldauf's counsel has since notified the court that

Defendants have withdrawn this request as they rightly should.  The Response was timely filed pursuant to Southern District of Indiana Local Rule 7.1(a), which grants parties fifteen days to file a response, and Federal Rule of Civil Procedure 6(e), providing three additional days, pursuant to Rule 5(b)(2)(D), when responding to motions served electronically.  Defendants' motion was filed electronically on June 8, 2007, and Baldauf's response was due no later than June 26, 2007, which was the date it was filed.

### 1. Admissibility of Non-Scientific Expert Testimony

The court begins its analysis of Clark's admissibility as an expert witness by recalling its Summary Judgment Entry discussion regarding the admissibility of Clark's report.  As noted then, in keeping with Federal Rule of Evidence 702 and the principles announced in *Daubert*, the court, as a threshold matter, must examine whether 1) the testimony will assist "the trier of fact to determine a fact in issue," and 2) that it "rests on a reliable foundation."  *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (quoting Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 597).

That Clark's expected testimony is not based on a scientific theory, methodology, or standard – that it is not science, even the sort typically described as soft science – does not preclude it from being considered expert testimony.  Rule 702 allows expert testimony based on "technical, or other specialized knowledge."  As such, the rule "specifically contemplates the admission of testimony by experts whose knowledge is based on experience."  *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000)

(affirming decision to allow an electrical engineer with extensive experience in electrical safety to testify as an expert witness about his inspection of a rail yard tower).

The Seventh Circuit has held that police officers may provide admissible expert testimony even when it is "entirely descriptive rather than based on empirical study of any sort (where the so-called *Daubert* test would be more helpful, particularly in distinguishing between 'real science or junk (courtroom) science.')" *Lawson v. Trowbridge*, 153 F.3d 368, 375 (7th Cir. 1998) (quoting *United States v. Williams*, 81 F.3d 1434, 1441-42 (7th Cir. 1996)).  Knowledge about police training is a specialized body of knowledge.  *Id.* at 376.  A police officer's testimony about that training can be helpful even when the testimony "'cover[s] matters that are within the average juror's comprehension.'"  *Id.* (quoting *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996)); *see also Cruz-Velasco*, 224 F.3d at 660 (noting that law enforcement officers may qualify as experts on matters of policing).

As Defendants correctly cite, a court must still assure itself that it is dealing with an expert, not just a hired gun.  *See Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996).  This does not mean, as this court has already noted, that *Daubert*'s non-exclusive factors for determining the admissibility of scientific expert testimony – whether the methodology (1) has been tested, (2) been subjected to peer review, (3) is susceptible to error rate analysis, (4) uses known standards, and (5) is generally accepted – should govern the admissibility of expertise based on experience or training. (Judged on such a standard, Defendants' proposed police procedures expert would fare little better than Plaintiff's.)  *Daubert*, 509 U.S. at 593-94.  As the Seventh Circuit noted

11

in *Tyus*, "the measure of intellectual rigor [required] will vary by the field of expertise and the way of demonstrating expertise will also vary." *Tyus*, 102 F.3d at 263. Nonetheless, the court must ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho* Tire, 526 U.S. at 152.

This court is satisfied that Clark possesses the minimum background and intellectual rigor required of a police procedures expert. He has more than twenty-one years of supervisory experience – fifteen as a lieutenant and six as a sergeant – in the in the Los Angeles County Sheriff's Department, which is one of the nation's largest local law enforcement agencies. (Clark Resume (Pl.'s Resp. Opp'n Mots. Summ. J. Ex. 33) 2-5.) He received training certificates from the California Commission on Peace Officer Standards and Training ("POST") and attended the Post Command College. (*Id.* at 6.) He supervised field officers as an acting station commander and commander of a multi-jurisdictional major crime unit. (*Id.* at 2-3.) He was involved in establishing the training requirements for reserve officers and he was involved in training them on the use of force and firearms. (Clark Dep. 29-30.)

This does not make him a model expert witness. Mr. Clark has neither developed police procedures manuals nor published articles on proper police procedure. Further, the frequency with which Mr. Clark has testified (ninety-five cases between January 23, 2000, and September 27, 2005) suggests that he has become a popular hired gun. (*See* Clark Sworn Testimony (Pl.'s Resp. Opp'n Mots. Summ. J. Ex.

12

36).)  Yet the court cannot say on this record that his opinions about proper police procedure are not grounded on experience and simply a matter of a party's willingness to pay his fee.[4]

Although the court ruled in its summary judgment motion that Clark's report was of little value because it did not show how his conclusions were derived from his expertise, this does not mean that Clark's testimony will be deficient.  In a video-conference deposition, Clark referred to the training of officers in responding to verbal complaints and remarks, and the appropriate level of physical force – none, in his opinion – that a trained officer in Davidson's position should have used.  (*See* Clark Dep. 189, 192, 196, 222-226.)  Clark has, and can, relate his opinions to his experience in supervising and training police officers.

---

[4]  The court notes that his experience and training is not substantially different than that of Defendants' proposed witness, Lt. Steven D. Guthrie, a staff instructor at the Indiana Law Enforcement Academy who teaches police ethics and community policing and assists in the instruction of physical tactics.  (*See* Defs.' Mots. Summ. J. Ex. D 2.)

13

### 2. *Relevancy of Clark's Testimony*

Defendants argue that Clark's testimony will not assist the jury because he does not offer "any opinion related to the claims remaining to be decided by the jury." (Defs.' Br. Supp. Mot. Exclude Clark 5.) They assert that Clark's three "findings," his ultimate conclusions, only relate to Baldauf's claims of false arrest, conspiracy, and negligent hiring and training, and that these claims have been resolved in Defendants' favor. (*Id.*)

Still pending for trial or further adjudication are Baldauf's Fourth Amendment excessive force and First Amendment retaliation claim against Davidson as well as a state claim holding Pittsboro liable for Davidson's alleged assault and battery. The court agrees with Defendants to the extent that the Summary Judgment Entry disposed of many of the issues relevant to Clark's proposed testimony. Moreover, much of his testimony in deposition addresses the "credibility" of the witnesses, which are issues reserved for the finder of fact. *See United States v. George*, 363 F.3d 666, 675 (7th Cir. 2004).

In *Stachniak v. Hayes*, 989 F.2d 914, 925 (7th Cir. 1993), the Seventh Circuit upheld the exclusion of a police expert who was unable to provide any testimony about the proper use of force but was prepared to testify, on the basis of his expertise, that the officers should be believed. The court noted that credibility determinations are not a proper subject for expert testimony. *Id.* "'[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony

14

may unduly influence the jury.'"  *Id.* (quoting *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991)).

Without doubt, Clark is prepared to convey his impressions that, based on his experience as a police supervisor in reviewing misconduct complaints, Baldauf was telling the truth and Davidson was not.  (*See, e.g.*, Clark Dep. 38, 53-54, 56-59, 91). Although he acknowledges that credibility determinations are for the jury to make, (*id.* at 58), it is evident from his deposition, that his conclusions on ultimate issues before the court, such as whether Davidson assaulted Baldauf, rests in large part on his credibility determinations.  (*See id.*; *see also* Clark Report 12 (stating his conclusion that "it was an assault by a police officer under the color of authority").  An opinion is not objectionable simply because it embraces an ultimate issue.  Fed. R. Evid. 704. However, this does not mean that the court must allow testimony that conveys Clark's judgment about who is to be believed, even if his judgment derives from his experience in evaluating police misconduct reports.

Nonetheless, the court finds that at least some of Clark's testimony is relevant. Clark's first finding includes his opinions that Davidson "abused his authority" and that his conduct was "assaultive."  These opinions relate as much as to the remaining claims of excessive force, First Amendment retaliation, and assault and battery as they did to the claims to be dismissed.  Moreover, Clark's deposition shows his ability to testify about the proper procedure for responding to verbal attacks and the appropriate use of force and the proper procedure for responding to verbal attacks.  (*See* Clark Dep. 196, 222-226.)  While care may be needed to prevent his testimony from straying into

15

opinions derived from a police officer's expertise in evaluating credibility, this is no reason to exclude him from testifying, based on his expertise in supervising and training officers, about the use of force and the proper way of responding to civilian complaints.

### 3.  Baldauf's Compliance with Expert Disclosure Rule

Defendants contend that even if Clark is qualified to testify about such issues, the court should not allow him to do so because his report failed to disclose these opinions. Federal Rule of Civil Procedure 26(a)(2)(B) requires a party offering expert testimony to provide a written report that contains "a complete statement of all opinions to be expressed and the basis and reasons therefor," as well as information about the expert's qualifications, fees, and other testimony, the data reviewed, and planned exhibits.

The court does not agree with Defendants' contention that Clark's report was deficient.  Although, as discussed above and in the court's Summary Judgment Entry, the report also focused on issues that have been dismissed and on matters outside the scope of admissible expert testimony, it gave Defendants' sufficient notice of Clark's opinion that Davidson's response to Baldauf was improper and his use of force uncalled for.  The report outlined the documents he reviewed in reaching this conclusion and, by discussing his qualifications, gave the Defendants fair notice of the basis and reasons for reaching his opinions.

Moreover, Defendants explored these reasons in deposition.  They questioned Clark about the course he taught reserves, The Legal and Moral Use of Force and

16

Firearms.  (Clark Dep. 30.)  They explored his knowledge and the basis for his

knowledge about the use of force.  (Clark Dep. 222-26.)  They asked him about how an

officer should respond when hearing a comment or complaint about his department.

(Id. at 196-97.)  Such questions demonstrate awareness that Davidson's use of force

and his response to Baldauf's comments were among the material issues of the case

and that Clark's opinions related to these issues.

       For the reasons discussed above, the court will **GRANT** in part and **DENY** in part

Defendant's motion to exclude Roger Clark as an expert witness.  Clark will be

prohibited from testifying about his evaluation of the credibility of the witnesses or giving

opinions that derive from such evaluations.  However, Clark may testify about the

procedures, including the use of force, for responding to a civilian's comments,

complaints, and physical contact.

## III.  CONCLUSION

       For the reasons discussed above, the Court **GRANTS** Baldauf's Motion to Strike

Defendants' Expert James Gaither (Doc. No. 130) and **GRANTS** in part and **DENIES** in

part Defendants' Motion in Limine to Exclude the Report and Testimony of Roger Clark

as an Expert Witness (Doc. No. 140).

       ALL OF WHICH IS ENTERED this 24th day of July 2007.

_____

John Daniel Tinder, Judge
United States District Court

17

Copies to:

Magistrate Judge Tim A. Baker

Michael K. Sutherlin                          Kenneth Anthony Collier-Magar
Michael K. Sutherlin & Associates             Collier-Magar & Roberts P.C.
msutherlin@michaelsutherlin.com               kenneth@cmrlawfirm.com

Robb Alan Minich                              Liberty L. Roberts
Michael K. Sutherlin & Associates             Collier-Magar & Roberts P.C.
robbminich@hotmail.com                        liberty@cmrlawfirrm.com