UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GEORGIA (JO) A. BALDAUF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:04-cv-1571-JDT-TAB |
| ) | |
| CLIFTON DAVIDSON, individually; ) | |
| JESSE MARLOW, individually and in his ) | |
| official capacity as Chief of Police; ) | |
| and the TOWN OF PITTSBORO, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' PETITION FOR REVIEW
AND MODIFICATION (Doc. No. 137)[1]**

Earlier this year, the court ruled that although probable cause existed for Plaintiff Georgia (Jo) A. Baldauf's arrest, she had presented sufficient evidence from which a reasonable jury could conclude that Defendant Clifton Davidson arrested her solely to prevent her from exercising her First Amendment rights. Whether a reasonable jury would reach that conclusion is another matter because the parties dispute many of the facts. However, the Defendants have asked the court to determine that, even if Davidson violated Baldauf's constitutional rights, he is entitled to qualified immunity.

The parties have briefed this issue and the court rules as follows.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

## I. BACKGROUND

This matter arises from a confrontation on January 27, 2003, between Baldauf and Davidson, then a Pittsboro Police officer, at a Crystal Flash convenience store in Pittsboro. Baldauf made a derogatory remark about the Pittsboro Police Department, and some yelling allegedly ensued. According to Baldauf, Davidson pushed her and ordered her out of the store. When he pointed his finger at her, she pushed it aside. Davidson then allegedly spun her around and shoved her against a counter.

According to Baldauf, Davidson told her that he was not going to arrest her and that she could leave. However, she says that as she was leaving, she told Davidson that she was going to file a complaint with his boss, Police Chief Jesse Marlow. She reportedly told him this again, and identified herself as a county commissioner in neighboring Boone County, when she returned to the store momentarily to collect her change. Davidson subsequently arrested Baldauf on charges of battery on a police officer and disorderly conduct as she was talking to Marlow at the town police offices.

For a detailed statement of the facts with citations to the record, the reader should refer to the court's Entry of December 18, 2006.

## II. DISCUSSION

Under the Federal Rules of Civil Procedure, a court may revise any decision or order, which adjudicates fewer than all claims and has not been reduced to judgment, "at any time before the entry of judgment adjudicating all the claims and the rights and

liabilities of all the parties." Fed. R. Civ. P. 54(b). As Defendants point out, the court did not address the issue of qualified immunity in its April 23, 2007, Entry on Plaintiff's Motion to Reconsider (Doc. No. 132.)

Qualified immunity is analyzed in two steps. First, the court must determine if the officer's alleged conduct, as supported by the plaintiff's evidence, would violate a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must decide if the right was clearly established in view of the "specific context of the case." *Id.* Officials are protected against reasonable mistakes in judgment. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202.

In examining Davidson's claim of qualified immunity, the court finds that Baldauf cannot pass the first step. After further reviewing the Supreme Court's holding in *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695 (2006), the court concludes that a plaintiff bringing a First Amendment claim arising from an arrest must show an absence of probable cause. In *Hartman*, the Supreme Court held that a plaintiff in a retaliatory prosecution claim must prove the absence of probable cause.[2] *Id.* at 1707. This court

---

[2] Prior to *Hartman*, the Fifth, Eighth and Eleventh Circuits, and to a substantial extent the Second, required a plaintiff to prove the absence of probable cause in retaliatory prosecution claims, while the District of Columbia, Sixth, and Tenth Circuits did not. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002); *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383-84 (11th Cir. 1998); *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992); *but see Blue v. Koren*, 72 F.3d 1075, 1083 n.5 (2d Cir. 1995) (containing dicta that would limit the reach of *Mozzochi*). *See also Moore v. Hartman*, 388 F.3d 871, 872-73 (D.C. Cir. 2004); *Greene v. Barber*, 310 F.3d 889, 897-998 (6th
(continued...)

finds that the law requires as much even when the plaintiff's claim is described as a retaliatory arrest, rather than a retaliatory prosecution.

In *Hartman*, the Supreme Court's primary rationale for making proof of probable cause a required element of retaliatory prosecution claims was the complex causation that must ordinarily be established. *Id.* at 1703 (stating "the need to prove a chain of causation from animus to injury, with details specific to retaliatory-prosecution cases . . . provides the strongest justification for the no-probable-cause requirement"). A plaintiff hoping to prevail must show that the officials seeking to retaliate, normally the police officers, induced the prosecutor to bring charges that the prosecutor would not otherwise have brought. *Id.* at 1705. However, prosecutors ordinarily do not inquire into an arresting officer's motivation; they simply want to know that probable cause exists. In the Supreme Court's view, requiring plaintiffs to establish the absence of probable cause would "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action" and would "address the presumption of prosecutorial regularity." *Id.* at 1706.

---

[2](...continued)
Cir. 2002); *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir. 2001).

In *Izen v. Catalina*, 398 F.3d 363, 368 n.7 (5th Cir. 2005), the Fifth Circuit included the Third Circuit as among those requiring the absence of probable cause but the case cited in support of this proposition, *Merkle v. Upper Dublin School District*, 211 F.3d 782 (3d Cir. 2000), does not appear to address the issue squarely. *See id.* at 794 (stating that the court's analysis of a § 1983 retaliation claim was "influenced" by the strength of the plaintiff's common law claim of malicious prosecution, in which the absence of probable cause was a requirement under Pennsylvania law). In *Izen*, the Fifth Circuit also included, but without supporting citation, the Seventh Circuit, as a circuit that allowed retaliatory prosecution claims irrespective of the existence of probable cause. *Izen,* 398 F.3d at 368 n.7.

4

At first glance, no such complex causation problems are present when a person brings a retaliatory arrest claim that focuses entirely on an officer's bodily seizure of a plaintiff through the power of arrest.  The Ninth Circuit concluded as much, although with regard to a seizure of property, not of a person.  In *Skoog v. County of Clackamas*, the court held that a plaintiff could bring a First Amendment retaliation claim against a police officer who seized a still camera even if probable cause existed for the search and seizure.  469 F.3d 1221, 1232 (9th Cir. 2006).  The court reasoned that *Hartman*'s ruling was limited to retaliation cases involving "multi-layered causation."  *See id.* at 1234.  It dismissed the case, however, after finding that the officers were entitled to qualified immunity because "the right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause" was not clearly established.  *Id.* at 1235.

In contrast, the Sixth and Eighth Circuits have concluded that *Hartman*'s ruling sweeps "broad[ly] enough to apply even where intervening actions by a prosecutor are not present."  *Williams v. City of Carl Junction*, 480 F.3d 871, 876 (8th Cir. 2007) (adopting the reasoning of *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006)).

In *Barnes*, the Sixth Circuit noted that the Supreme Court offered two reasons for embracing a no-probable-cause requirement in retaliatory prosecution cases.  *Barnes*, 449 F.3d at 719.  First was the "'powerful evidentiary significance'" of probable cause.  *Id.* at 719 (quoting *Hartman*, 126 S.Ct. at 1704).  Second, was the complex causation issues.  However, the Sixth Circuit found that the Supreme Court's remark "that causation in retaliatory prosecution cases is '*usually* more complex than it is in other

5

retaliation cases'" to be significant. *Id.* at 720, (quoting *Hartman*, 126 S.Ct. at 1704) (emphasis added by the Sixth Circuit). By using the word "usually,' the Supreme Court was acknowledging that causation is not always complex even in retaliatory prosecution cases.

Arguably, in laying the foundation for imposing a no-probable-cause requirement, the Supreme Court was not offering two alternative explanations for its new rule. Rather, the "powerful evidentiary significance" of probable cause was only a factor supporting the rationale for the no-probable-cause requirement. *See Hartman*, 126 S.Ct. at 1707 (concluding in summary that the complexity of causation should be addressed in defining the elements of the tort). Moreover, the Court's comment that "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury is usually more complex than it is in other retaliation cases," *id.* at 1704, is ambiguous. The statement could be read to mean that causation issues in other retaliation cases (whether involving law enforcement, employment, or housing) are "usually," but not always, simpler.

Nonetheless, this court finds the Sixth Circuit's reasoning persuasive for several reasons. First, the distinction between a retaliatory prosecution claim and a retaliatory arrest claim is somewhat artificial. In both cases, the defendants in such suits are the arresting or investigating officers because of the prosecutor's absolute immunity. *See Hartman*, 126 S.Ct. at 1704-05. Moreover, an arrest is merely the first step in a prosecution. Insofar as the plaintiff's injuries stem from the filing of charges, plaintiff, in

essence, is claiming retaliatory prosecution, and under *Hartman*, must show the absence of probable cause.[3]

Second, to the extent that a plaintiff's injuries derive from the seizure of his or her person, then the retaliatory arrest claim differs little from a traditional Fourth Amendment claim, in which the Supreme Court has repeatedly held that an officer's subjective motivations are irrelevant. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (stating that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"); *Whren v. United States*, 517 U.S. 806, 813 (1996) (declaring "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"). The mere existence of probable cause will bar the claim.

Third, the Supreme Court acknowledged that its holding in *Hartman* would come at a cost, that there might be exceptional cases in which some injustice might result. *See, e.g.*, *Hartman*, 126 S. Ct. at 1704 n.7 (noting, but rejecting, the lower court's suggestion that recovery should remain possible "in those rare cases where strong motive evidence combines with weak probable cause to support a finding that the prosecution would not have occurred but for the official's retaliatory animus"). The court stated that the requirement to prove the absence of probable cause "will usually be cost

---

[3] The Seventh Circuit does not appear to have used the term "retaliatory arrest" at all, preferring to discuss instead whether a First Amendment retaliation claim might be brought "in the context of an arrest." *Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002), *overruled on other grounds by Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004). In this case, decided prior to *Hartman*, the court declined to rule at that time whether the existence of probable cause barred such a claim although it noted that such a rule "would not be incongruent" with its Fourth Amendment precedent. *Id.*

free by any incremental reckoning." *Id.* at 1707.  But this means there may be occasions when the imposition of a no-probable-cause requirement will preclude an otherwise worthy claim.

Accepting all the evidence and reasonable inferences in the light most favorable to Baldauf, this may indeed be such an occasion.  According to her testimony, Davidson had announced his decision not to arrest her and told her that she was free to go.[4]  (Baldauf Dep. 62-63, 65).   Perhaps a reasonable jury could conclude from this that Davidson became concerned once she announced her intent to complain to his boss and even more alarmed upon learning that she was a Boone County Commissioner (a person of substance whose comments would not be readily dismissed), and that therefore his real motivation in arresting her was to suppress her First Amendment rights.

Yet carving an exception here that would allow a jury to focus on Davidson's subjective motivations despite the existence of probable cause would allow numerous plaintiffs to bring Fourth Amendment claims that would otherwise be dismissed by relabeling them as First Amendment retaliation claims.  There are numerous, legitimate

---

[4]  Defendants assert that the decision to arrest Baldauf was made "prior to the time she went to complain." (Defs' Pet. Review 2 n.1.)  This may or may not be so.  The evidence shows that after Baldauf first stated her intent to complain, Davidson made a telephone call to Marlow. (*See, e.g.*, Baldauf Dep. 63, 67; Johns Dep. 48.)  After he finished the call, he told one of the convenience store clerks that Marlow had instructed him that he should have arrested her. (Johns Dep. 48-49.)  However, the clerk only heard Davidson's end of this conversation.  While she recalled hearing Davidson describe a confrontation much as she observed, (Johns Dep. 49-50), Marlow recalled Davidson telling him that Baldauf had "battered" him by grabbing his fingers.  (Marlow Dep. 157.)  There is also evidence in the record that Marlow and Davidson later disagreed about whether Baldauf should be arrested.  (Baldauf Dep. 78-79.)  At one point, Marlow asked Davidson if he wanted to go through with the arrest.  (*Id.* at 78.)

reasons why officers may tell a suspect that they are free to leave while intending to arrest them later or leaving that possibility open. More investigation may be needed. The officer may need to consult with a supervisor.

The law is settled that when an arrest is "based on probable cause" in the sense that the person would have been arrested regardless, a First Amendment retaliation claim will fail despite proof of the officer's desire to retaliate. "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman*, 126 S. Ct. at 1704. For Fourth Amendment claims and now, post-Hartman, retaliatory prosecution claims, the existence of probable cause is sufficient proof that the action would have been taken anyway. There is no distinguishable constitutional violation for a "retaliatory arrest" that is legally cognizable as being different from a retaliatory prosecution or Fourth Amendment claim.

For these reasons, the court concludes that Baldauf does not have a First Amendment "retaliatory arrest" claim given the court's earlier finding that probable cause existed for her arrest, or that Davidson had reasonable grounds for believing that probable cause existed.

Moreover, having revisited its earlier determination that the arrest could be a First Amendment violation, the court finds that Davidson would also avoid liability under the first step of the qualified immunity analysis because his conduct would not violate a

constitutional right. Even under its prior ruling, however, Davidson would be entitled to qualified immunity under the second step, which requires the constitutional right to be clearly established.

Defendants phrased the issue as whether Baldauf had a "right to be free from an arrest based on probable cause simply because she took the opportunity to complain" prior to her arrest. (Defs.' Pet. Review 3.) No such right exists, and Baldauf has not asserted one. Rather, the constitutional right involved is Baldauf's exercise of her First Amendment rights of free speech and to petition the government for redress. On a general level, these rights are clearly established. *See, e.g.*, *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1342-43 (7th Cir. 1977) (stating that the right to complain to responsible government officials about the conduct of subordinates is plainly a part of First Amendment protections).

Qualified immunity is not determined at such a general level, else it would be converted "into a rule of virtually unqualified liability." *McDonald ex. rel. McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir. 1992). Although courts refer to "particularized rights," *see, e.g.*, *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1995), these are shorthand ways of stating that the application of the right, or the legal rule, must be particularized. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. *See also Brousseau v. Haugen*, 543 U.S. 194, 198 (2004) (focusing on whether, under the particular circumstances confronted, the officer had "fair notice" that the alleged conduct was unlawful); *Saucier*, 533 U.S. at 202 (explaining that the

"dispositive inquiry . . . is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted").

In this case, the "particularized" legal rule at issue is whether it would be apparent to a reasonable officer that, having told a suspect that she was free to leave, and allowed that person to leave, despite conduct that would support probable cause for her arrest, he would be violating her First Amendment rights by arresting her, after she announced her intention to file a complaint. Baldauf, it would seem, would phrase the legal rule even more narrowly, adding the phrase "to prevent her from filing a complaint or punish her." (See Baldauf's Resp. Defs.' Pet. Review 4-5 (suggesting the legal rule is whether an officer can hold out the threat of arrest "to prevent a citizen from engaging in speech.") But this would add a subjective inquiry into the qualified immunity analysis, essentially resurrecting the "malicious intent" prong of *Wood v. Strickland*, 420 U.S. 308, 322 (1975), which was specifically abrogated by *Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982).

As the court's discussion above makes clear, other circuits have divided, and the Seventh Circuit has not yet ruled, on whether the existence of probable cause precludes a First Amendment retaliation claim in the context of arrest. *See Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002), *overruled on other grounds by Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004). Moreover, the law is clear that an arrest is lawful even if colored by some degree of bad motive. Under these circumstances, the law was not clearly established that a reasonable officer in Davidson's position would realize that his arrest of Baldauf was unlawful. Davidson is entitled to qualified immunity.

### III.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' request in its Petition for Review and Modification (Doc. No. 137) and finds that Davidson is entitled to qualified immunity on Baldauf's First Amendment claim with respect to her arrest. Moreover, the court **MODIFIES** its Entry on Plaintiff's Motion to Reconsider (Doc. No. 132) and will **GRANT** Davidson's Motion for Summary Judgment (Doc. 63) with respect to Baldauf's claim of First Amendment retaliation in connection with her arrest.

Entry of judgment on this claim will await disposition of the remaining claims, which share a close factual connection to the claims for which summary judgment is appropriate.  Surviving for trial are the following issues:

(1) A claim against Davidson pursuant to § 1983 that he violated Baldauf's Fourth Amendment rights by an excessive use of force in response to her contact with his finger,

(2) A claim against Davidson also pursuant to § 1983 that he violated her constitutional right of free speech by ordering her and/or attempting to force her out of the store to punish her for remarks she had made or to silence her from making any further comments, and

(3) A claim against Pittsboro pursuant to state law that Davidson assaulted and battered her, by shoving and threatening her as he ordered her to leave the store the first time, and by using excessive force after she pushed his finger aside.

ALL OF WHICH IS ENTERED this 24th day of July 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Michael K. Sutherlin
Michael K. Sutherlin & Associates
msutherlin@michaelsutherlin.com

Robb Alan Minich
Michael K. Sutherlin & Associates
robbminich@hotmail.com

Kenneth Anthony Collier-Magar
Collier-Magar & Roberts P.C.
kenneth@cmrlawfirm.com

Liberty L. Roberts
Collier-Magar & Roberts P.C.
liberty@cmrlawfirrm.com